**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AVIAD BESSLER, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ZAFGEN, INC. and THOMAS E. HUGHES,<br><br>　　　　　Defendants. | Civil Action No. 1:15-cv-13618 |

**MEMORANDUM OF LAW IN SUPPORT OF TERRY BRENNAN, RON KENNER, KEVIN KOZIATEK, VINCENT RAMPE, AND DRAGON GATE MANAGEMENT LTD'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND FOR APPROVAL OF THEIR SELECTION OF CO-LEAD COUNSEL**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................... 1

II.  PROCEDURAL HISTORY ................................................................................................ 2

III. STATEMENT OF FACTS ................................................................................................. 2

IV. ARGUMENT ...................................................................................................................... 4

    A.  Movants Should Be Appointed Co-Lead Plaintiffs ............................................................ 4

        1.  The Procedure Required By The PSLRA ..................................................................... 4

        2.  Movants Satisfy The Lead Plaintiff Requirements Of The PSLRA ............................... 6

          a)  Movants Have Complied with the PSLRA and Should Be Appointed Co-Lead Plaintiffs .................................................................................................................... 6

          b)  Movants Have the Largest Financial Interest in the Relief Sought by the Class ........... 6

          c)  Movants Otherwise Satisfy Rule 23 ............................................................................ 7

              (1)  Movants Satisfy the Typicality Requirement ........................................................ 8

              (2)  Movants Fulfill the Adequacy Requirement ......................................................... 9

    B.  Movants' Selection Of Counsel Should Be Approved ..................................................... 10

V.  CONCLUSION ................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Cases**

*City of Bristol Pension Fund v. Vertex Pharms.*,
   2012 U.S. Dist. LEXIS 180974 (D. Mass. Dec. 21, 2012) ........................................................ 8

*Greebel v. FTP Software, Inc.*,
   939 F. Supp. 57 (D. Mass. 1996) ......................................................................................... 5, 7

*Hohenstein v. Behringer Harvard REIT, I, Inc.*,
   No. 3:12-cv-3772, 2012 U.S. Dist. LEXIS 180013 (N.D. Tex. Dec. 20, 2012) ................. 10-11

*In re Bank of Boston Corp. Sec. Litig.*,
   762 F. Supp. 1525 (D. Mass. 1991) ..................................................................................... 8-9

*In re Lernout & Hauspie Sec. Litig.*,
   138 F. Supp. 2d 39 (D. Mass. 2001) ..................................................................................... 6-8

*In re Milestone Scientific Sec. Litig.*,
   183 F.R.D. 404 (D.N.J. 1998) ................................................................................................ 10

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) ............................................................................................. 8

*In re Tyco Int'l, Ltd. Sec. Litig.*,
   2000 U.S. Dist. LEXIS 13390 (D.N.H. Aug. 17, 2000) .......................................................... 7

*Priest v. Zayre Corp.*,
   118 F.R.D. 552 (D. Mass. 1988) .............................................................................................. 9

*Tehrani v. Biogen, Inc.*,
   2015 U.S. Dist. LEXIS 156001 (D. Mass. Nov. 18, 2015) ...................................................... 9

**Statutes**

Private Securities Litigation Reform Act of 1995 (the "PSLRA") ...................................... *passim*

15 U.S.C. § 78u-4 ................................................................................................................ *passim*

15 U.S.C. §§ 78j(b) and 78t(a) ...................................................................................................... 1

17 C.F.R. §240.10b-5 .................................................................................................................... 1

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

**Legislative History**

H.R. Conf. Rep. No. 104-369 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731) ....................... 6

Terry Brennan, Ron Kenner, Kevin Koziatek, Vincent Rampe, and Dragon Gate Management Ltd. ("Movants" or the "Brennan Group"), respectfully submit this Memorandum of Law in support of their motion for appointment as Co-Lead Plaintiffs in the above-referenced action (the "Action") pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and approval of their selection of Block & Leviton LLP ("Block & Leviton") and The Rosen Law Firm, P.A. ("Rosen") as Co-Lead Counsel.

## I.     INTRODUCTION

The Action is a class action lawsuit on behalf of all persons who acquired securities of Zafgen, Inc. ("Zafgen" or the "Company") between January 12, 2015 and October 16, 2015, inclusive (the "Class Period"). These Actions are brought pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5. Defendants are Zafgen and its Chief Executive Officer, Thomas Hughes.

The PSLRA directs the Court to appoint as lead plaintiff the movant or group of movants who have demonstrated the "largest financial interest in the litigation" and also meet the typicality and adequacy prongs of Fed. R. Civ. P. 23. *See* 15 U.S.C. 78u-4(a)(3)(B)(iii). As demonstrated herein, Movants have sustained losses totaling $988,343.43, calculated using the first-in-first-out ("FIFO") method, and $889,711.47, calculated under the last-in-first-out ("LIFO") method. Movants' losses are, to the best of their knowledge, the largest among purported class members seeking appointment as Lead Plaintiff. Movants are unaware of any other class members who have filed an action or an application for appointment as lead plaintiff

1

who have sustained greater losses.[1] Movants understand the commitments required of a Lead Plaintiff and have retained competent and experienced counsel to prosecute this securities litigation.

Pursuant to the PSLRA, the Lead Plaintiff selects the Lead Counsel subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movants have selected the law firms of Block & Leviton and Rosen to serve as Co-Lead Counsel. Block & Leviton and Rosen have extensive experience successfully litigating securities class actions and possess the resources necessary to vigorously pursue this litigation on behalf of the putative class. For the reasons summarized herein and discussed more fully below, Movants' motion should be approved in its entirety.

## II. PROCEDURAL HISTORY

The present action was filed on October 21, 2015. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), notice that a class action had been initiated against Defendants was published that same day on PR Newswire, a widely circulated national business-oriented wire service. The notice advised members of the proposed class of their right to move the Court for appointment as Lead Plaintiff. *See* Block Decl. Ex. A. Movants are members of the proposed class (see Block Decl. at Exs. B, C, D, E and F) and are filing this motion within the sixty-day period following publication of the notice pursuant to Section 21D of the PSLRA.

## III. STATEMENT OF FACTS

Zafgen is a small pharmaceutical company whose valuation is closely tied to the value of

---

[1] The losses suffered by Movants are not the same as their legally compensable damages. Measuring the latter is often a complex exercise and is premature at this stage of litigation. The approximate losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(B) and based upon reference to information concerning the current market for the Company's securities. Movants' transactions in Zafgen securities are set forth in their Certifications annexed as Exhibits B, C, D, E, and F to the Declaration of Jeffrey C. Block in Support of this Motion ("Block Dec.").

a single drug—an anti-obesity drug called beloranib. ¶ 2.[2] On January 12, 2015, Zafgen filed a Form S-1 in connection with a follow-on offering. In that filing, Zafgen described six previously completed clinical trials of beloranib and disclosed that "there were two serious thrombotic adverse events" in one of the Phase 2 trials of beloranib (the ZAF-201 trial). *Id.* Until October 16, 2015, Zafgen had never disclosed any other thrombotic adverse events related to beloranib. *Id.*

In September 2015, there was heavy selling by insiders, including the Company's Chief Executive Officer (Defendant Thomas E. Hughes), Chief Medical Officer, and Chief Commercial Officer. ¶ 3. Then, beginning on October 12, 2015, Zafgen shares plummeted. Between the opening of trading on October 12, 2015 and the close of trading on October 13, 2015, Zafgen shares dropped from $34.76/share to $15.75/share—a 54.7% drop. *Id.*

The only publicly available news that appeared to contribute to the drop was a report that the Company had cancelled an upcoming scheduled appearance at an RBC Capital Conference. ¶ 4. As the Boston Globe subsequently reported, however, rumors of a patient death in an ongoing Phase 3 beloranib study had begun circulating in the marketplace as early as October 13, 2015. *Id.*

On October 14, 2015, Zafgen confirmed that a patient in its Phase 3 trial of beloranib had died. ¶ 5. Zafgen failed to disclose that the patient was receiving beloranib—*i.e.*, not a placebo—and failed to disclose anything about thrombotic events in prior clinical trials. *Id.*

The Company's stock price rose on this partial, misleading disclosure. After trading as low as $10.90/share, Zafgen stock closed on October 14, 2015 at $19.50 per share. ¶ 6. The stock continued to trade up on October 15, 2015, as high as $22.15/share and closing at $21.02/share.

---

[2] These facts are derived from the allegations in the complaint and all paragraph references are to the complaint.

*Id.*

Late in the day on October 15, 2015, however, the Food and Drug Administration ("FDA") informed Zafgen that beloranib has been placed on partial clinical hold. ¶ 7. This forced Zafgen to make corrective disclosures on October 16, 2015, including that: (i) the patient who died was receiving beloranib; and (ii) there had been **four** thrombotic adverse events in prior clinical studies of beloranib—two more than previously reported—as well as two additional, previously undisclosed thrombotic events in ongoing studies, for a total of six thrombotic events out of 400 patients receiving beloranib compared to zero thrombotic events in the approximately 150 patients treated with a placebo. *Id.*

The Company's stock dropped sharply after these corrective disclosures. After closing at $21.02/share on October 15, 2015, Zafgen stock closed at $10.36/share on October 16, 2015—a 50.7% drop. ¶ 8.

## IV.   ARGUMENT

### A.   Movants Should Be Appointed Co-Lead Plaintiffs

#### 1.   The Procedure Required By The PSLRA

The PSLRA has established a procedure governing the appointment of a lead plaintiff "in each private action arising under . . . [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1), (a)(3)(B)(i).

*First*, the plaintiff who files the initial action must publish a notice to the class, within twenty days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4 (a)(3)(A)(i). Here, the relevant notice was

published on PR Newswire on October 21, 2015.[3] Block Decl. at Ex. A. Within sixty days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4 (a)(3)(A)-(B).

*Second*, the PSLRA provides that within ninety days after publication of the notice, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice ...
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4 (a)(3)(B) (iii).

As discussed below, Movants have complied with the procedural prerequisites of the PSLRA, have demonstrated what is, to the best of their knowledge, the largest financial interest in the litigation of any other class member(s) seeking appointment as lead plaintiff. Movants meet the relevant requirements of Fed. R. Civ. P. 23, and should be appointed as Co-Lead Plaintiffs.

---

[3] The statute requires that notice be published "in a widely circulated business-oriented publication or wire service." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996).

        2.    <u>Movants Satisfy The Lead Plaintiff Requirements Of The PSLRA</u>

                a)    *<u>Movants Have Complied with the PSLRA and Should Be Appointed Co-Lead Plaintiffs</u>*

Movants timely moved this Court to be appointed Co-Lead Plaintiffs on behalf of all members of the Class. Movants have submitted signed certifications stating that they have reviewed the complaint and are willing to serve as a representative party on behalf of the putative class, pursuant to 15 U.S.C. § 78u-4(a)(2). *See* Block Dec. at Exs. B, C, D, E, and F. In addition, Movants have selected and retained experienced and competent counsel to represent them and the putative class. *See* Block Dec. Ex. L (Firm Resume of Block & Leviton); *Id.*, Ex. M (Firm Resume of Rosen).

Accordingly, Movants satisfy the requirements of 15 U.S.C. § 78u-4(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiff and selection of Counsel, as set forth herein, considered and approved by the Court.

                b)    *<u>Movants Have the Largest Financial Interest in the Relief Sought by the Class</u>*

The Court is to presume that the most adequate plaintiff is the movant with "the largest financial interest in the relief sought by the class" who otherwise satisfies the requirements of Rule 23(a). 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). *See also In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 43 (D. Mass. 2001) (courts should presume that "the member of the purported class with the largest financial stake in the relief sought is the most adequate plaintiff.") (quoting H.R. Conf. Rep. No. 104-369, at 33-34 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731)).

In calculating the largest financial interest, courts in this district (and elsewhere in the First Circuit) will aggregate the losses of a small group of movants who have agreed to work

together—even where there is no prior relationship between group members. *Id.* at 44-45 ("The weight of the case law suggests that the trial court has the discretion to designate a triumvirate of unrelated persons as a lead plaintiff group," so long as the Court can "ensure that the lead plaintiffs, not the attorneys, are in the driver's seat."); *In re Tyco Int'l, Ltd. Sec. Litig.*, 2000 U.S. Dist. LEXIS 13390, at *16, (D.N.H. Aug. 17, 2000) (appointing three lead plaintiffs and noting that the SEC has specifically acknowledged the propriety of appointing five plaintiffs as co-lead plaintiffs); *Greebel v. FTP Software*, 939 F. Supp. 57, 64-65 (D. Mass. 1996) (three plaintiffs met the statutory requirements to be appointed lead plaintiff).

As evidenced by the accompanying certifications and loss charts, Movants purchased Zafgen securities during the Class Period and have suffered estimated losses of over $988,343.43 (FIFO) / $889,711.47 (LIFO) as a result of Defendants' misconduct. *See* Block Dec. at Exs. G, H, I, J, and K. (loss calculation charts). Movants have a significant financial interest in this case and are unaware of any other applicant or applicant group that has sustained greater financial losses in connection with transactions in Zafgen securities during the Class Period. Therefore, Movants have the "largest financial interest in the relief sought by the class," satisfy all of the PSLRA's prerequisites for appointment as lead plaintiff, and should be appointed as Co-Lead Plaintiffs. 15 U.S.C. §78u-4(a)(3)(B)(iii). *Lernout*, 138 F. Supp. 2d at 43; *Greebel*, 939 F. Supp. at 59 ("the statute erects a rebuttable presumption that the most capable plaintiff is the person with the largest financial interest in the relief sought by the class, [who] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.") (internal quotation omitted).

c) *Movants Otherwise Satisfy Rule 23*

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "'otherwise satisf[y] the

7

requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movants. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a class certification motion is filed. *See City of Bristol Pension Fund v. Vertex Pharms.*, 2012 U.S. Dist. LEXIS 180974, at *10 (D. Mass. Dec. 21, 2012) ("In deciding a motion to serve as lead plaintiff, a court need only make findings as to the typicality and adequacy of the proposed lead plaintiff. These findings need only be preliminary.") (citing *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009)).

Movants satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiff.

### *(1)   Movants Satisfy the Typicality Requirement*

Typicality under Rule 23(a)(3) requires that the lead plaintiffs' claim be aligned with the claims of absent class members, and is demonstrated by a showing that the movants' claims are based on the same legal theories as the claims of the putative class. *Lernout*, 138 F. Supp. 2d at 46 ("The plaintiffs' burden in proving typicality requires that the named plaintiffs' claims arise from the 'same events or course of conduct' and involve the same legal theory as do the claims of the rest of the class." (citing *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532

(D. Mass. 1991)). To meet this burden, Movants need not show that their claims are *identical* to absent class members' claims. *Id.* ("Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical.") (citing *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988)).

Movants satisfy the typicality requirement of Rule 23 because, just like all other class members, they: (1) transacted in Zafgen securities during the Class Period at artificially inflated prices; and (2) suffered damages thereby. Thus, Movants' claims are typical of those of other members of the proposed class since all the claims arise out of the same course of events and are based on the same legal theories.

### *(2) Movants Fulfill the Adequacy Requirement*

Movants are adequate under Rule 23(a)(4) if: (1) Movants' counsel is qualified, experienced and generally able to conduct the proposed litigation and (2) Movants do not have interests antagonistic to those of the class. *Tehrani v. Biogen, Inc.*, 2015 U.S. Dist. LEXIS 156001, at *9 (D. Mass. Nov. 18, 2015) ("Plaintiff also, as a preliminary matter, appears capable of adequately protecting the interests of the class, in that plaintiff possesses common interests and an absence of conflict with the class members and plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation.") (internal quotations omitted).

Movants will more than adequately represent the interests of the putative class. There is no conflict between the interests of Movants and those of the other members of the putative class. Moreover, Movants have already taken significant steps demonstrating that they recognize, and will protect, the interests of the class: (1) they have executed certifications detailing their Class Period transactions and expressing their willingness to serve as class representatives; (2)

they have moved this Court to be appointed Lead Plaintiffs; and (3) they have retained competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner.

Furthermore, Movants' significant "financial stake in the litigation provides an adequate incentive for [Movants] to vigorously prosecute the action." *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998).

### B. Movants' Selection Of Counsel Should Be Approved

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Here, Movants have selected Block & Leviton LLP and The Rosen Law Firm, P.A. as Co-Lead Counsel.

As set forth in the accompanying firm resume (Block Dec., Ex. L), Block & Leviton attorneys have recovered billions of dollars for investors in the course of their careers. Among other significant representations, Block & Leviton is currently representing certain State of Ohio pension funds as co-lead plaintiffs in the securities class action against BP seeking to recover investor losses related to the catastrophic explosion on the Deepwater Horizon oil rig and the resultant oil spill in the Gulf of Mexico.

Moreover, one district court recently noted that:

> [T]he attorneys at Block & Leviton are highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resume. . . . [T]he court is convinced that [Plaintiffs'] chosen counsel [Block & Leviton] have the skill and knowledge that will enable them to prosecute this action effectively and expeditiously.

*Hohenstein v. Behringer Harvard REIT, I, Inc.*, No. 3:12-cv-3772, 2012 U.S. Dist. LEXIS

180013, *12 (N.D. Tex. Dec. 20, 2012).[4]

As set forth in the accompanying firm resume (Block Dec., Ex. M), Rosen is a highly accomplished firm that is currently acting as lead counsel in a number of federal securities actions and have achieved many multi-million dollar recoveries for investors. Rosen has experience with securities litigation involving companies in the pharmaceutical sector, specifically, having recently achieved a $20 million partial settlement of a federal securities action in *Deering v. Galena Biopharma, Inc.*, No. 3:14-cv-00367-SI (D. Ore.). Rosen also achieved a multi-million dollar settlement for class members in *Nguyen v. Radient Pharmaceuticals Corporation*, Case No. CV11-0405-DOC (MLGx) (C.D. Cal.).

## V.     CONCLUSION

For all the foregoing reasons, Movants respectfully request that the Court appoint Movants as Co-Lead Plaintiffs in the Action and approve Movants' selection of Block & Leviton and Rosen as Co-Lead Counsel.

---

[4] *See also In re Swisher Hygiene, Inc., Securities and Derivative Litig.*, 3:12-md-2384 GCM (W.D.N.C. Aug. 6, 2014) (transcript of settlement hearing, in case in which Block & Leviton was sole lead counsel and obtained settlement worth 30% of class' alleged losses; "The settlement is – gosh. . . . the fact that it's occurring within the context of a securities case, which is very difficult for plaintiffs to win, is extremely impressive to me. . . . [T]his is a matter which has been fairly litigated by people who know what they're doing.").

Dated: December 21, 2015                    Respectfully submitted,

/s/ Jeffrey C. Block
Jeffrey C. Block (BBO # 600747)
Joel A. Fleming (BBO # 685285)
Bradley Vettraino (BBO # 691834)
BLOCK & LEVITON LLP
155 Federal Street, Suite 400
Boston, MA 02110
Tel.: 617.398.5600
Fax: 617.507.6020
Jeff@blockesq.com
Joel@blockesq.com
Bradley@blockesq.com

*Counsel for Lead Plaintiff Movants Terry Brennan, Kevin Koziatek, and Ron Kenner and Proposed Lead Counsel for the Class*

Phillip Kim
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 34th Floor
New York, NY 10016
Tel.: 212.686.1060
Fax: 212.202.3827
pkim@rosenlegal.com

*Counsel for Lead Plaintiff Movants Vincent Rampe and Dragon Gate Management Ltd. and Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

      I, Joel Fleming, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 21, 2015.

                                                  /s/ Joel Fleming